OTTERBOURG P.C.
Attorneys for Israel Discount Bank of New York
230 Park Avenue
New York, New York 10169-0075
Jonathan N. Helfat
Melanie L. Cyganowski
Adam C. Silverstein
Erik B. Weinick
Tel. No.: (212) 661-9100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:                                                                   :     Chapter 11
    OAK ROCK FINANCIAL, LLC,                          :
                                                       :     Case No. 8-13-72251 (REG)
                        Debtor.         :
------------------------------------------------------------------------X

**MOTION OF ISRAEL DISCOUNT BANK OF NEW YORK
FOR AN ORDER, PURSUANT TO RULE OF BANKRUPTCY
PROCEDURE 2004, COMPELLING THE PRODUCTION OF
DOCUMENTS AND TESTIMONY FROM CERTAIN OF THE DEBTOR'S
BORROWERS, BORROWERS' PRINCIPALS AND BORROWERS' BANKS**

Israel Discount Bank of New York, ("IDB" or "Agent"), as Agent for the lenders (the "Lenders") of debtor Oak Rock Financial, LLC ("Oak Rock" or "Debtor"), by and through its undersigned counsel, respectfully submits this motion for entry of an order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, granting leave to IDB to issue subpoena duces tecum and ad testificandum to certain of the Debtor's borrowers, the borrowers' respective principals (collectively, the "Dealers") and the financial institutions with which the borrowers respectively had depository accounts, Bank of America, N.A. and Wells Fargo Bank, N.A. (the "Banks"). All of the foregoing witnesses are believed to possess significant knowledge of, and documents concerning, the business, affairs and finances of the Debtor, as well as potential

3315016.1

sources of recovery to the Debtor. In support of its Motion, IDB respectfully alleges the following:

## BACKGROUND

1. The Debtor was a specialty asset-based lending company that, among other things, (i) lent to dealers that, in turn, provided installment financing on consumer products, (ii) "factored," *i.e.,* purchased receivables of, operating businesses, (iii) financed dealers that purchase charged-off or delinquent installment contracts and/or delinquent credit card receivables; and (iv) provided financing to dealers who finance, through installment contracts, the purchase of used autos and auto equipment and supplies.

2. On December 2, 2013, IDB filed a motion, under Bankruptcy Rule 2004, authorizing it to serve subpoenas on a sampling of 13 "Tier 3" (*i.e.,* non-performing) dealers. (*See* Dkt. #497.) The Court granted the motion by Order entered December 18, 2013. (*See* Dkt. # 507.)

3. Thereafter, IDB served, or attempted service on, each of the dealers identified in the December 2, 2013 motion. Of the 13 dealers that IDB served, or attempted to serve, only four produced documents responsive to the subpoena; two were served but were unable to produce any documents; and IDB was unable to locate and serve the remaining seven dealers.

4. The experience reflects that an effort to more broadly subpoena the Tier 3 dealers, which, in the wake of, and, in certain circumstances, even prior to, the Debtor's bankruptcy filing, is unlikely to be productive. Nevertheless, there are three other dealers that IDB believes it is appropriate to subpoena: Now Auto Group, Inc. ("Now Auto"), MK Auto, Inc. ("MK Auto") and IPEC Foods, LLC ("IPEC").

5. At the time of the Debtor's bankruptcy filing, these three Dealers had outstanding loan balances totaling $42,929,084 (Now Auto - $16,004,383; MK Auto - $14,610,533; IPEC - $12,314,168). The substantial balances, coupled with the Debtor's assessment, based upon its review of books and records, that the balances reflect actual advances made by the Debtor to each of the Dealers (and accrued interest), raises questions concerning whether the Dealers, and their principals, improperly applied and/or transferred the monies advanced to them by the Debtor. Discovery from the Dealers, therefore, is warranted.

6. Additionally, because the Dealers have been non-responsive, and the issuance of subpoenas to these Dealers may be as unproductive as service of the subpoenas on the 13 dealers IDB previously served or attempted to serve, IDB seeks authority to serve subpoenas on the following individuals, who are or were, during the relevant time period, principals of the Dealers: Mr. Scott Miller, current or former President and CEO of NowAuto; Mr. Magdi Gendi, current or former CEO of MK Auto; and Mr. Tarek Ramadan, current or former Principal of IPEC.

7. IDB also seeks information concerning the application and transfers, if any, of the loan proceeds advanced by the Debtor to these Dealers from their financial institutions: Bank of America, N.A., in the case of each of MK Auto and IPEC; and Wells Fargo Bank, N.A., in the case of NowAuto.

8. Specifically, IDB requests leave of this Court to seek information, in the form of both documentary evidence and testimony under oath, pursuant to Bankruptcy Rule 2004, from the Dealers regarding their financial transactions with the Debtor (including, but not limited to loans obtained from, and repaid to, the Debtor), the Dealers' use and/or transfer of the proceeds of these financial transactions and any involvement with and/or actual or constructive knowledge

of the fraud perpetrated by the Debtor during the time that John Murphy ("Murphy") served as its managing member.

9. In addition, IDB requests leave of this Court to seek information, in the form of both documentary evidence and testimony under oath, pursuant to Bankruptcy Rule 2004, from the Banks regarding payments made by the Debtor to the Dealers, as well as any payments made by the Dealers to the Debtor and/or Murphy, including bank statements and checks (images of both the front and back).

10. Accordingly, IDB's motion for relief under Bankruptcy Rule 2004 should be granted in its entirety.

## JURISDICTION

11. This Court has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.

12. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

14. IDB seeks entry of an Order, pursuant to Bankruptcy Rule 2004, in the same or substantially the same form as the accompanying proposed Order, authorizing IDB to issue a subpoena duces tecum and ad testificandum to the Dealers and the Banks in substantially the same forms which are also attached hereto.

15. Under the circumstances, it is necessary and appropriate that information concerning operations, finances and transfers of the Debtor be obtained from the Dealers and the Bank.

16. Areas of investigation by IDB would include, without limitation:

> a. the location of any assets or property of the Debtor;
>
> b. any transfers of assets or property by or from the Debtor;
>
> c. the scope and nature of the fraudulent conduct in which the Debtor has admitted it engaged;
>
> d. any knowledge of the Dealers and/or their principals of the fraud in which the Debtor has admitted it engaged;
>
> e. communications concerning the Debtor with various interested parties, including Murphy; and
>
> f. such other areas as may be relevant.

17. There is clear statutory basis for the relief requested. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the Court may order the examination of any entity" with regard to the "acts, conduct or property, or to the liabilities and financial condition of the debtor, or to any other matter that may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004. Bankruptcy Rule 2004(c) provides for the discovery of documents.

18. Rule 2004 discovery is an investigatory tool undertaken prior to litigation that is independent of a complaint or contested matter. As such, it need not be tied to specific factual allegations at issue between parties to a dispute. In re Symington, 209 B.R. 678, 684 (Bankr. D. Md. 1997).

19. The scope of discovery under Rule 2004 is significantly broader than discovery under the Federal Rules of Civil Procedure. See In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991); In re ECAM Publications, Inc., 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991). The purpose of the 2004 examination is to "show the entire financial condition of the estate and to enable the court to discover its extent and whereabouts, and to

come into possession of it, so that the rights of the creditor may be preserved." In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bank. E.D.N.Y. 1991) (quoting Cameron v. U.S., 710, 717 (1914)). See also In re Bakalis, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (holding that the purpose of Rule 2004 "is to facilitate the discovery of assets and the unearthing of frauds" into general matters and issues relating to the bankruptcy estate). The scope of Rule 2004 examinations is very broad and can be in the nature of a "fishing expedition." In re Coffee Cupboard, Inc., 128 B.R. at 514; In re Corso, 328 B.R. 375, 383 (E.D.N.Y. 2005); In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983).

20. It is appropriate to use Bankruptcy Rule 2004 discovery to determine whether to initiate a cause of action. See, e.g., In re ECAM Publications, Inc., 131 B.R. 556, 560 (Bankr. S.D.N.Y. 1991) (intended purpose of a Rule 2004 is "to determine whether there are grounds to bring an action to recover property of the estate"); In re Table Talk, Inc., 51 B.R. 143, 146 (Bankr. D. Mass. 1985) (party may use Rule 2004 to investigate potential claims, even if they ultimately are found to be non-core claims).

21. The Rule 2004 investigation sought by IDB will benefit the Debtor's estate and provide crucial details into the amount and nature of the Debtor's assets. Among other things, discovery from the Dealers and the Banks will provide critical details into the pre-petition operations, finances and affairs of the Debtor, and will assist the parties to this bankruptcy in determining the location of the assets of the Debtor.

22. No party will be prejudiced by the granting of the relief requested herein.

23. IDB respectfully requests that this Court waive the requirements of Local Bankruptcy Rule 9013-1(b) that any motion filed shall have an accompanying memorandum of law. No novel issues of law are presented in this application and many citations to the relevant

authority are contained herein. Accordingly, IDB submits that waiver of the requirements of Rule 9013-1(b) is appropriate under these circumstances.

24. IDB reserves its rights to supplement its requests for additional documents and information as such is deemed necessary.

25. Except as described above, no previous application or motion for the relief sought herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, IDB respectfully submits that this Motion should be granted and the issuance of a subpoena <u>duces tecum</u> and <u>ad testificandum</u> in the form submitted herewith be approved.

Dated: New York, New York
June 4, 2014

Respectfully submitted:

OTTERBOURG P.C.

By: /s/ Erik B. Weinick
　　　Erik B. Weinick

230 Park Avenue
New York, New York 10169
(212) 661-9100
*Attorneys for Israel Discount Bank of New York, as Agent*